# EXHIBIT A

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
Dauphin _____ County

| For Prothonotary Use Only: |
| --- |
| Docket No: 0023-CV-937 |

*The information collected on this form is used solely for court administration purposes.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

Lead Plaintiff's Name:
Michalene Peticca

Lead Defendant's Name:
The Roman Catholic Diocese of Harrisburg

Are money damages requested?  [x] Yes  [ ] No

Dollar Amount Requested:
(check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

Is this a *Class Action Suit?*  [ ] Yes  [x] No

Is this an *MDJ Appeal?*  [ ] Yes  [x] No

Name of Plaintiff/Appellant's Attorney:  John R. Martin, Esquire
- [ ] Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case:**  Place an "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE*.  If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability *(does not include mass tort)*
- [ ] Slander/Libel/ Defamation
- [ ] Other: _____

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____

**PROFESSIONAL LIABLTY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other

_____

- [ ] Employment Dispute: Discrimination
- [x] Employment Dispute: Other
  Wage and Hour, FMLA
  STD

- [ ] Other: _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other

_____

- [ ] Zoning Board
- [ ] Other: _____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: _____

*Updated 1/1/2011*

John R. Martin
Attorney I.D. No. 204125
Pillar+Aught
4201 E. Park Circle
Harrisburg, PA 17111
*Attorneys for Plaintiff*

| | | |
|---|---|---|
| **Michalene Peticca,** | : | IN THE COURT OF COMMON PLEAS |
| *Plaintiff,* | : | OF DAUPHIN COUNTY, |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | CIVIL ACTION – LAW |
| **The Roman Catholic Diocese of Harrisburg** | : | |
| **(Catholic Cemeteries),** | : | NO. 2023-CV-9317 |
| *Defendant.* | : | |
| | : | JURY TRIAL DEMANDED |

## NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE

DAUPHIN COUNTY LAWYERS REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

## NOTICE

## CONCERNING MEDIATION OF ACTION PENDING BEFORE THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY

The Judges of the Court of Common Pleas of Dauphin County believe that mediation of lawsuits is a very important component of dispute resolution. Virtually all lawsuits can benefit in some manner from mediation.

The Court has adopted Dauphin County Local Rule 1001 to encourage the use of mediation. This early alert enables litigants to determine the best time during the life of their lawsuit for a mediation session. The intent of this early alert is to help the parties act upon the requirement to consider good faith mediation at the optimal time.

The Dauphin County Bar Association provides mediation services and can be reached at 717-232-7536. Free mediation sessions for pro bono cases referred by MidPenn Legal Services are available through the DCBA.

### AVISO

USTED HA SIDO DEMANDADO/A EN CORTE. Si usted desea defenderse de las demandas que se presentan mas adelante en las siguientes paginas, debe tomaraccion dentro de los proximos veinte (20) dias despues de la notificacion de esta Demanda y Aviso radicando personalmente o por medio de un abogado una comparecencia escrita y radicando en la Corte por escrito sus defensas de, y objeciones a, las demandas presentadas aqui en contra suya. Se le advierte de que si usted falla de tomar accion como se describe anteriormente, el caso puede proceder sin usted y un fallo por cualquier sumade dinero reclamada en la demanda o cualquier otra reclamacion o remedio solicitado por el demandantepuede serdictado en contra suya por la Corte sin mas aviso adicional. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE UN ABOGADO, LLAME OVAYA ALA SIGUIENTE OFICINA. ESTA OFICINA PUEDE PROVEERLE INFORMACION A CERCA DE COMO CONSEGUIR UN ABOGADO. SI USTED NO PUEDE PAGAR POR LOS SERVICIOS DE UN ABOGADO, ES POSIBLE QUE ESTA OFICINA LE PUEDA PROVEER INFORMACION SOBRE AGENCIAS QUE OFREZCAN SERVICIOS LEGALES SIN CARGO O BAJO COSTO A PERSONAS QUE CUALIFICAN.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

John R. Martin
Attorney I.D. No. 204125
Pillar+Aught
4201 E. Park Circle
Harrisburg, PA 17111
*Attorneys for Plaintiff*

| | | |
|---|---|---|
| **Michalene Peticca,** | : | IN THE COURT OF COMMON PLEAS |
| *Plaintiff,* | : | OF DAUPHIN COUNTY, |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | CIVIL ACTION – LAW |
| | : | |
| **The Roman Catholic Diocese of Harrisburg** | : | NO. 2023-CV-937 |
| **(Catholic Cemeteries),** | : | |
| *Defendant.* | : | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Michalene Peticca, through her undersigned counsel, files the within Complaint alleging various unlawful acts in connection with her employment and, to that end, avers as follows:

### Parties

1.      Plaintiff, **Michalene Peticca** ("Plaintiff"), is an adult individual residing at 215 Walnut Street, Carlisle, PA 17013.

2.      Defendant, **The Roman Catholic Diocese of Harrisburg** ("Defendant")—with offices located at 4800 Union Deposit Road, Harrisburg, PA 17111—operates multiple cemeteries in the area, including the Gate of Heaven Cemetery in Mechanicsburg, PA, where Plaintiff was last employed.

### Jurisdiction and Venue

3.      This action arises under the laws of the United States and/or the Commonwealth of Pennsylvania and is within the general subject matter jurisdiction of this Court.

4.      Venue is proper in this forum because Defendant operates in Dauphin County.

- 1 -

### Factual Background

5.       Plaintiff first became employed by Defendant in or around December 2017. She was hired to work as a Cemetery Maintenance Worker and, in that role, was properly classified as a "non-exempt" employee who was entitled to payment for all hours worked, including overtime.

6.       Thereafter, in or around July 2020, Plaintiff became the Cemetery Manager of the Gate of Heaven Cemetery and, for the reasons set forth below, was misclassified in that role by Defendant as "exempt" from the requirements and benefit of overtime pay for the duration of her employment.

7.       Indeed, despite having "manager" in her title, at no point during Plaintiff's time as Cemetery Manager did she customarily and regularly direct the work of (at least) two full-time employees or their equivalent. In the absence of such employees, Defendant required Plaintiff to spend the majority of her work time on a variety of strenuous, manual tasks (e.g., landscaping, excavation), which would have ordinarily been performed by non-exempt employees.

8.       Given the reality of the physical duties she was required to perform on a daily basis, and despite her nominal title of "manager," Plaintiff was misclassified by Defendant as an exempt employee, and, as such, she is due all wages for the hours she spent working in excess of forty in any given workweek.

9.       To that end, at all times relevant to her employment as Cemetery Manager, Plaintiff worked, conservatively, an average of fifty (50) hours per week, which included Saturdays and Sundays.

10.      At the time she was terminated (for unlawful reasons, as discussed below), Plaintiff was paid an annual salary of $55,000, which was based on a standard, forty-hour workweek. Thus, at a regular rate of $26.44/hr. (i.e., $55,000 ÷ 52wks ÷ 40hrs), Plaintiff is entitled to an additional

overtime payment of at least $396.63 (i.e., $26.44 x 1.5 x 10hrs) for each week she worked in the role as Cemetery Manager.

11.     The physical nature of the duties Plaintiff was required to perform had a detrimental impact on her health. In early 2023, Plaintiff underwent a full-body CAT scan, which, among other things, revealed significant degeneration in her lumbar vertebrae. As a result, in or around May 2023, Plaintiff requested temporary light duty status, whereupon the vast majority of her job duties needed to be outsourced to other Diocesan employees, as Plaintiff was the only person working at the Gate of Heaven Cemetery at that time.

12.     After just a few weeks, however, it was determined by Plaintiff's physician that her serious medical condition required her to take a continuous leave of absence. Accordingly, she applied for, and was granted, a leave of absence from work in or around June 2023 in accordance with the Family and Medical Leave Act ("FMLA").

13.     Thereafter, on August 2, 2023, in light of her ongoing medical issues, Plaintiff sent an email to both her supervisor and the Human Resources Director requesting paperwork to apply for the short term disability ("STD") benefits promised by Defendant to its employees. A true and correct copy of Defendant's STD Insurance Plan is attached hereto as **Exhibit A**.

14.     Less than two weeks later, on August 11, 2023, Defendant terminated Plaintiff while she was still out of work on her approved FMLA leave of absence. Further, by fashioning her termination as one taken "for cause," Defendant denied Plaintiff the ability to actually apply for the STD benefits (and, potentially, the corresponding long-term disability benefits) she had requested and to which she was entitled.

- 3 -

15.    According to Defendant, the termination decision was premised on "a multitude of problems" that were supposedly discovered while Plaintiff was taking her approved FMLA leave of absence.

16.    Plaintiff disputes and/or has a reasonable explanation for each such "problem" on which Defendant purportedly relied when making its termination decision. Beyond those disputed facts—all of which call into question the underlying "legitimate" basis for Defendants' actions—it should be noted that, since the time she was appointed to the (nominal) role of Cemetery Manager in July 2020, up through and including the start of her FMLA leave of absence in June 2023, Plaintiff did not receive a single performance review, nor, for that matter, was she ever disciplined for any reason. Moreover, Plaintiff was never provided with a policy manual or similar written instructions that would have alerted her to the issues that Defendant supposedly relied upon when terminating her, and she never even saw her job description until she requested a copy in or around April 2023—in connection with the health issues she was experiencing as a result of the manual, non-exempt work she was forced to perform. Plaintiff also made multiple requests for additional personnel to support her in her role as Cemetery Manager, which routinely fell on deaf ears.

17.    According to Defendant, the issues or concerns supporting Plaintiff's termination were supposedly "discovered"—less than one week after the start of her FMLA leave—by two fellow Cemetery Managers who had been assigned to cover the Gate of Heaven Cemetery in her absence. Curiously, however, these same individuals had, on several previous occasions, provided similar coverage for Plaintiff in connection with her prior extended absences (e.g., via her use of vacation or sick leave), and at no point were any of these issues raised with her or otherwise brought to her attention. Rather, it was not until Plaintiff applied for FMLA leave and requested STD benefits that these issues apparently become a problem for Defendant.

- 4 -

18.     Further, in the termination letter that was issued to Plaintiff, Defendant states that the "deficiencies" giving rise to her termination constitute "willful acts of misconduct where [she] ha[d] defiantly chosen not to follow policy or the directives given to [her] by [her] supervisor." This is not true. As noted, *supra*, Plaintiff received little, if any, guidance or direction with respect to her duties as Cemetery Manager, and she never received a performance review or similar materials that would, in any way, establish the "policy or directives" that Defendant claims she somehow "defiantly chose[] not to follow."

19.     At a minimum,[1] Plaintiff's termination was taken in retaliation for her FMLA leave (and/or attendant inquiry and request for STD benefits). Similarly situated employees who had not taken an FMLA leave of absence (and/or requested STD benefits) were treated more favorably than Plaintiff—in that any supposed performance-related concerns (to the extent the issues raised by Defendant were even valid or attributable to Plaintiff) were addressed via some type of formal or progressive process, rather than through immediate termination.

20.     Rather than work with her to address (let alone ensure she was ever informed about) the issues that Defendant, apparently, "discovered" while Plaintiff was on her FMLA leave of absence (a benefit, as noted *supra*, that was provided to other employees who had not taken FMLA leave), Defendant chose the dramatic punishment of immediate termination and, taking things one step further, declared that termination to be "for cause" in an attempt to deny her eligibility for STD benefits.

---

[1] In addition to the causes of action set forth herein, Plaintiff has filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of age and disability, as well as retaliation, under both federal and state law. Upon properly exhausting her administrative remedies with the EEOC, Plaintiff intends to amend this Complaint to include those additional claims.

**COUNT I**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 201, *et seq.***
**(Unpaid Overtime)**

21.     Plaintiff incorporates by reference the allegations of all preceding paragraphs of the Complaint as though fully set forth herein.

22.     The overtime provisions set forth in the Fair Labor Standards Act ("FLSA") and its supporting federal regulations promulgated by the U.S. Department of Labor apply to Defendant and require that Plaintiff be paid overtime at a rate not less than 1-1/2 times her regular rate of pay for all hours worked in excess of forty (40) in any given workweek.

23.     Defendant improperly and unlawfully chose to misclassify Plaintiff as an "exempt" employee in an attempt to avoid the obligation of paying her the overtime amounts that are required under the FLSA.

24.     As a result of Defendant's unlawful acts, Plaintiff has been deprived of overtime compensation in an amount to be determined at trial, and she is entitled to recovery of that amount, along with liquidated damages, attorneys' fees, interest, costs, and any additional relief this Court deems just and appropriate.

25.     Defendant's unlawful conduct, as described in this Complaint, has been intentional and willful. Defendant was aware or, at the very least, should have been aware that the practices described in this Complaint were unlawful. Defendant has not made a good faith effort to comply with the FLSA with respect to Plaintiff's compensation. Accordingly, and because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies to this claim, pursuant to 29 U.S.C. § 255.

**COUNT II**
**Violation of the Pennsylvania Minimum Wage Act of 1968**
**43 P.S. § 333.101, *et seq.***
**(Unpaid Overtime)**

26.     Plaintiff incorporates by reference the allegations of all preceding paragraphs of the Complaint as though fully set forth herein.

27.     The overtime provisions set forth in the Pennsylvania Minimum Wage Act of 1968 ("PMWA") and its supporting regulations promulgated by the Department of Labor and Industry apply to Defendant and require that Plaintiff be paid overtime at a rate not less than 1-1/2 times her regular rate of pay for all hours worked in excess of forty (40) in any given workweek.

28.     Defendant improperly and unlawfully chose to misclassify Plaintiff as an "exempt" employee in an attempt to avoid the obligation of paying her the overtime amounts that are required under the PMWA.

29.     As a result of Defendant's unlawful acts, Plaintiff has been deprived of overtime compensation in an amount to be determined at trial, and she is entitled to recovery of that amount, along with her attorneys' fees, interest, costs, and any additional relief this Court deems just and appropriate.

**COUNT III**
**Violation of the Family and Medical Leave Act**
**29 U.S.C. § 2601, *et seq.***
**(Retaliation/Discrimination)**

30.     Plaintiff incorporates by reference the allegations of all preceding paragraphs of the Complaint as though fully set forth herein.

31.     Defendant is an employer covered by the FMLA.

32.     Plaintiff satisfied all eligibility requirements to take available, job-protected leave under the FMLA.

33.     Plaintiff applied for, and Defendant approved, a continuous leave of absence under the FMLA in or around June 2023.

34.     While Plaintiff was on her approved FMLA leave of absence, Defendant terminated her based on wholly pretextual reasons.

35.     Similarly situated employees who had not taken an FMLA leave of absence were treated more favorably than Plaintiff.

36.     Defendant's conduct, as alleged herein, constitutes unlawful discrimination and/or retaliation against Plaintiff in violation of her rights under the FMLA.

37.     As a result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in the form of past and future lost wages and benefits, including expenses related to additional medical treatment. Plaintiff is also entitled to liquidated damages, attorneys' fees, interest, costs, and any additional relief this Court deems just and appropriate.

**COUNT IV**
**Breach of Contract**
**(Bad Faith Denial of STD Benefits)**

38.     Plaintiff incorporates by reference the allegations of all preceding paragraphs of the Complaint as though fully set forth herein.

39.     Plaintiff was eligible for STD benefits pursuant to the terms of Defendant's STD Insurance Plan, a true and correct copy of which is attached hereto as Exhibit A.

40.     Defendant offered this (non-ERISA) plan to its employees, including Plaintiff, as a benefit to induce their continued employment. Indeed, a reasonable person in Plaintiff's position would understand that her continued employment would obligate Defendant to provide her with STD benefits (and, if/when such benefits were exhausted, long-term disability benefits) if she met the terms and conditions of the STD Insurance Plan.

41.     Accordingly, Defendant's STD Insurance Plan constitutes a unilateral contract, the terms of which Plaintiff accepted by continuing to remain employed with Defendant.

42.     On or about August 2, 2023, Plaintiff requested paperwork so that she could apply for STD benefits. However, Defendant never provided her with the requested paperwork, and less than two weeks later, Defendant terminated Plaintiff's employment based on false and entirely pretextual reasons.

43.     Defendant used these bogus reasons to justify a "cause"-based termination, which according to Defendant, rendered Plaintiff ineligible for the STD benefits she had just recently requested.

44.     Accordingly, Defendant's termination of Plaintiff and attendant refusal to honor the terms of its STD Insurance Plan constitutes a breach of contract, for which Plaintiff has suffered (and continues to suffer) damages in the form of a 60% salary continuation for anywhere from a minimum of six months up to and including her normal retirement age, as well as any additional relief this Court deems just and appropriate.

45.     Moreover, given Defendant's role as "insurer" of the STD Insurance Plan—within the meaning of 42 Pa. C.S. § 8371—Defendant's bad faith denial further entitles Plaintiff to interest in an amount equal to the prime rate of interest plus 3%, an award of punitive damages, attorneys' fees, and costs.

**COUNT V**
**Violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.***
**(Bad Faith Denial of STD Benefits)**

46.     Plaintiff incorporates by reference the allegations of all preceding paragraphs of the Complaint as though fully set forth herein.

47.     The STD (as well as the long-term disability) benefits offered by Defendant are "wages" within the meaning of the Pennsylvania Wage Payment and Collection Law ("WPCL").

48.     Despite its agreement to pay these wages, Defendant, in bad faith, failed and/or refused to compensate Plaintiff as required under the WPCL. Defendant's failure to pay Plaintiff these wages under these circumstances further entitles her to the receipt of liquidated damages in an amount equal to twenty-five percent (25%) of the total wages that are determined to be due and owing.

49.     Plaintiff has been deprived of wages—in an amount to be determined at trial—and is entitled to recovery of such amounts, along with interest, liquidated damages, costs, reasonable attorney's fees, and any further relief this Court deems just and appropriate.

**[PRAYER FOR RELIEF AND SIGNATURE BLOCK FOLLOW]**

**Prayer for Relief**

WHEREFORE, Plaintiff, Michalene Peticca, respectfully requests judgment be entered in her favor and this Court award the following relief, the total amount of which, exclusive of interest and costs, exceeds the $50,000.00 mandatory arbitration jurisdictional threshold:

a) Payment of overtime compensation for all hours worked in excess of forty (40) in any given workweek at a rate not less than 1-1/2 times Plaintiff's regular rate of pay.

b) Economic damages in the form of back pay, front pay, past lost wages, future lost wages, lost pay increases, and lost benefits.

c) STD and long-term disability benefits up through and including Plaintiff's normal retirement age.

d) Liquidated damages, as permitted by the relevant statute(s) at issue.

e) Punitive damages, as permitted by the relevant statute at issue.

f) Pre- and post-judgment interest.

g) Attorney's fees and costs of this action.

h) Such other relief as this Court shall deem just and proper.

Respectfully submitted,

**PILLAR+AUGHT**

By: _____

John R. Martin, Esq.
Attorney I.D. No. 204125
jmartin@pillaraught.com
4201 E. Park Circle
Harrisburg, PA 17111
(717) 308-9910

Dated: December 5, 2023

- 11 -

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Plaintiff, Michalene Peticca

Signature: _____

Name: John R. Martin

Attorney No. (if applicable): 204125

## VERIFICATION

I, Michalene Peticca, verify that the statements contained in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. These statements are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Date: November 30, 2023

Michalene Peticca

# Exhibit A

# HARRISBURG CATHOLIC ADMINISATRTIVE SERVICES

## SHORT-TERM DISABILITY INSURANCE PLAN

### July 2023

### TABLE OF CONTENTS

Definition of Disability ............................. 1

Eligibility ................................................2

Elimination Period ...................................2

Benefit Amount.........................................2

Benefit Duration ......................................3

Recurrent Disability ................................3

Multiple Absences ....................................3

Benefit Offsets .........................................3

Survivor Benefit .......................................4

Pre-Existing Condition Limitation ...........4

Claims......................................................5

Employment Benefit Status .....................6

Return to Work ........................................6

## WHAT IS DISABILITY?

You will be considered disabled if, due to sickness or accidental bodily injury, which requires treatment, by a physician, you are unable to perform 80 % or more of the material duties of your current occupation.  Injuries caused by war or act of war, during service in the armed forces, in a riot or civil insurrection, or in the commission of a felony, as well as self-inflicted injuries are not eligible for Short-Term Disability (STD) insurance coverage.  "Sickness" is defined as an illness or disease, including pregnancy or complications of pregnancy, which requires treatment by a licensed physician.

The Diocese of Harrisburg reserves the right to reassign an employee to another position within the Diocese that the employee could perform in the event that they are unable to perform 80% or more of the duties required by their current position.

1

## SCHEDULE OF INSURANCE
## SHORT-TERM DISABILITY PLAN

This Schedule of Insurance details the Diocesan Short-Term Disability (STD) Plan.

**Plan Sponsor:**   Harrisburg Catholic Administrative Servces

### Eligibility Requirements

To be eligible to be enrolled in the STD Insurance Plan, an employee must

> Be active and full-time (regularly scheduled to work at least 30 hours per week);
> Be a citizen or legal resident of the United States, its territories or Canada;
> Have completed twelve (12) months of continuous/uninterrupted service;

A temporary or seasonal employee is not eligible for STD insurance.

### How long must you be disabled before your benefits begin?
### (Elimination period)

The Elimination Period is the length of time prior to benefits being payable during which you are continuously disabled. The Elimination Period starts on the Date of Disability and continues for a period of 14 calendar days. Sick leave must be utilized during this elimination period and you may chose to make use of vacation time and personal days.

### STD Benefit Amount

Earnings are multiplied by 60% less benefit offsets. Earnings means base annual salary paid on a biweekly basis, excluding overtime pay, bonuses and extra compensation received from the employer on a periodic basis. Earnings for a commissioned employee mean the W-2 earnings for the last full year the individual was employed.

**The maximum STD monthly benefit amount is $4,615 bi-weekly before reduction by benefit offsets. The minimum STD bi-weekly benefit amount is $260 before reduction by benefit offsets.**

The Disability payment is a biweekly payment at 60% of gross normal pay that is subject to dollar for dollar earnings reductions from benefit offsets. The payment is subject to federal withholding and tax (FICA) but not state or local tax.

2

### Maximum Benefit Period

Short Term Disability is defined as a period of continuous disability lasting 26 weeks, commencing on the date you are determined as disabled by your physician. The maximum benefit period means the longest period of time for which STD Benefits are payable for any one period of continuous Disability, whether from one or more causes. The maximum Benefit Period is 24 weeks and begins at the end of the Elimination Period. Should an employee still have a balance of accrued sick leave at the end of the elimination period then this must be utilized before STD payments will be paid. STD Benefits will stop at the end of 24 weeks i.e. 26 weeks from the Date of Disability. Should you still be disabled you will need to apply for Long-Term Disability Insurance.

### Recurrent Disability

A Recurrent Disability may be treated as part of your prior claim if the re-occurrence occurs within 90 calendar days of the end of your prior claim. You will not be required to satisfy another Elimination Period. The amount of your STD Benefit will not change, and the Maximum Benefit Period will be the balance of the Maximum Benefit Period remaining unused from your original claim.

### Multiple Absences

An employee will receive benefits for the full duration of each disability claim, provided the employee has returned to work for a minimum period of 90 continuous / uninterrupted calendar days of employment between disabilities.

### Foreign Medical Treatment Limitations

You are not eligible for disability benefits during any period of disability in which you are hospitalized or receiving medical treatment outside the United States, its territories or Canada.

### Benefit Offsets

All employees are required to apply, in good faith, for benefits that may be applicable to their circumstances. Receipt of any such benefit must be declared to the Diocese of Harrisburg, as it will be offset against any disability benefit being paid under this policy. Should you not inform the Diocese of Harrisburg of receipt of any such benefit and it is subsequently bought to the attention of the Diocese of Harrisburg then the Diocese reserves the right to be reimbursed in the sum of the benefit received.

Disability benefits will be reduced by the following: salary continuance for a specified period or severance pay from the employer; Workers' Compensation benefits; Unemployment Compensation benefits; retirement benefits from any employer; Social Security benefits or "its equivalent" (example federal employee); disability benefits under a state disability income benefit law; disability benefits under a group insurance plan different from that of the Diocese of Harrisburg; disability benefits from the Veterans' Administration, disability benefits paid under the Pennsylvania Motor Vehicle Responsibility Act; benefits under any Federal Act or Plan which you, your spouse, or children under age 18 receive or are eligible to receive due to your disability; and amounts received as a result of claims for any of the above.

### Exceptions to Benefit Offsets

Disability benefits will not be reduced by the following: cost of living increases in any benefit offset amount; health insurance coverage which is an integral part of retirement benefits; reimbursement for hospital, medical or surgical expense; and group credit or mortgage disability insurance benefits.

Disability benefits will not be affected by the income sources listed below:

a.   Profit sharing plan;
b.   Thrift or savings plan;
c.   Deferred compensation plan;
d.   Plan under Internal Revenue Code (IRC) Section 401(k) or 457;
e.   Tax-sheltered annuity (TSA) under IRC Section 403(b);
f.   Individual retirement account (IRA);
g.   Disability insurance under an individual policy.

### Survivor Benefit

A Survivor Benefit, which means a lump sum payment equal to 3 times the STD monthly benefit amount not reduced by benefit offsets, will be paid as follows:

1.   To your surviving spouse;
2.   If you do not have a surviving spouse, but do have surviving dependent children, to your estate.

If you do not have a surviving spouse or surviving dependent children, there is no survivor benefit.

4

### Pre-Existing Condition Limitation

If a participant has a pre-existing condition when he/she is enrolled in the STD Insurance Plan, this individual will not be covered for disability caused by that condition during the first 12 months he/she participates in the Plan.

A pre-existing condition is defined as a mental or physical condition for which the individual in question has (a) consulted a physician; (b) received medical treatment or services; or (c) taken prescribed drugs during the 3 months prior to the date his/her STD coverage is effective.

### Claims

The employee must file a disability claim on the forms provided by the Diocese of Harrisburg. These forms provide information concerning the employer, the employee, and the employee's occupation, as well as satisfactory evidence that the employee is disabled (normally a physician's statement).

To be eligible for short-term disability benefits, an employee must complete and mail the required forms to the Diocese within 90 days after the date of disability. (This time limitation does not apply for anyone who lacks legal capacity.) The employee will receive a written decision concerning his/her claim within 60 days after the claim has been received. If an employee's claim forms are incomplete or further documentation is required for proof of disability, a request for further information will be received from the independent medical assessment company. If they do not receive this information within 60 days of mailing the request, the employee's claim may be denied or suspended.

If the claim is denied, the employee may request a review of the claim within 60 days after receiving the notice of denial.  The employee must make this request in writing to the Director of Human Resources, Diocese of Harrisburg submitting written comments or other items to support his/her claim. The request for review must also incorporate another completed and updated set of claim forms. A further medical review will be performed, taking account of the updated information and a notice of the decision reached will be sent to the employee within 60 days after the request for a review has been received.  You should be aware that as part of the review process you might be requested to undergo a physical examination.

If a STD benefit recipient dies, any STD benefits payable on the date of death will be paid   to his/her estate.

The claim of anyone receiving STD benefits may be investigated at any time. At its own expense, the Diocese may have a benefit recipient examined at reasonable intervals by selected specialists, including physicians, psychologists, psychiatrists or vocational evaluators.   Failure to cooperate with such examinations may result in denial or suspension of STD benefits.

### When Benefits end

- Claimant is no longer disabled
- Claimant fails to provide satisfactory proof of continuing disability
- Claimant continues to be disabled beyond the maximum benefit period
- On Claimant's death
- Claimant temporarily returns to active work as defined in this plan under 'Recurrent Disability'

### Employment Benefit Status

An employee on STD is not permitted to: -
- Accrue sick leave, vacation or personal days
- Make 401K contributions

Health Insurance:
If you are currently enrolled in the Health Insurance programs (medical, dental and vision), your coverage will continue under the same terms and conditions for the duration of you STD claim. Your employer will pay for up to three (3) full months of coverage. If you have not returned to work after the (3) full months of benefits expires this insurance plan will cover the employer paid portion of health care to the end of the 26 week period of STD.

Group Term Life Insurance:
If you are currently enrolled in the Group Term Life Insurance program coverage will continue throughout the 26 week period of STD. You may be required to complete a waiver of premium application.

Voluntary Benefits:
At the time of claim if you are enrolled in any Voluntary Term Life, Critical Illness, Accident or Universal Life polices those coverages may continue. Provided there are sufficient funds available, premiums will be deducted from the STD bi-weekly payment.

### Return to Work

 An employee who returns to work after receiving STD payments will be required to furnish a physicians release for duty.

6

**Plan Amendments**

The Diocese of Harrisburg reserves the right to amend this Plan from time to time and these Amendments can include, but are not to be limited to, changes in the definition of disability, eligibility, benefit periods, and benefit amounts. However, any changes will not change the benefits already being received by any employee/claimant.

**Please direct any questions to Harrisburg Catholic Administrative Services, Payroll/Benefits Office**

Payroll@hbgdiocese.org

Telephone (717) 657-4804.

Harrisburg Catholic Administrative Services
4800 Union Deposit Rd
Harrisburg, PA   17111

7

## NOTICE

## CONCERNING MEDIATION OF ACTION PENDING BEFORE THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY

The Judges of the Court of Common Pleas of Dauphin County believe that mediation of lawsuits is a very important component of dispute resolution. Virtually all lawsuits can benefit in some manner from mediation.

The Court has adopted Dauphin County Local Rule 1001 to encourage the use of mediation. This early alert enables litigants to determine the best time during the life of their lawsuit for a mediation session. The intent of this early alert is to help the parties act upon the requirement to consider good faith mediation at the optimal time.

The Dauphin County Bar Association provides mediation services and can be reached at 717-232-7536. Free mediation sessions for pro bono cases referred by MidPenn Legal Services are available through the DCBA.

## AVISO

USTED HA SIDO DEMANDADO/A EN CORTE. Si usted desea defenderse de las demandas que se presentan mas adelante en las siguientes paginas,debe tomaraccion dentro de los proximos veinte (20) dias despues de la notificacion de esta Demanda y Aviso radicando personalmente o por medio de un abogado una comparecencia escrita y radicando en la Corte por escrito sus defensas de, y objeciones a, las demandas presentadas aqui en contra suya. Se le advierte de que si usted falla de tomar accion como se describe anteriormente, el caso puede proceder sin usted y un fallo por cualquier sumade dinero reclamada en la demanda o cualquier otra reclamacion o remedio solicitado por el demandantepuede serdictado en contra suya por la Corte sin mas aviso adicional. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE UN ABOGADO, LLAME OVAYA ALA SIGUIENTE OFICINA. ESTA OFICINA PUEDE PROVEERLE INFORMACION A CERCA DE COMO CONSEGUIR UN ABOGADO. SI USTED NO PUEDE PAGAR POR LOS SERVICIOS DE UN ABOGADO, ES POSIBLE QUE ESTA OFICINA LE PUEDA PROVEER INFORMACION SOBRE AGENCIAS QUE OFREZCAN SERVICIOS LEGALES SIN CARGO O BAJO COSTO A PERSONAS QUE CUALIFICAN.

DAUPHIN COUNTY LAWYER REFERRAL SERVICE
213 North Front Street
Harrisburg, PA 17101
(717) 232-7536

## AVISO

## REFERENCES ALA MEDIACIÓN DE LAS ACCIONES PENDIENTES ANTESLA CORTE DE SÚPLICAS COMUNES DEL CONDADO DE DAUPHIN

Los jueces de la corte de súplicas comunes del condado de Dauphin creen quela mediación de pleitos es un componente muy importante de la resolución del conflicto. Virtualmente todos los pleitos pueden beneficiar de cierta maneradela mediación.

La code ha adoptado la regla local de condado de Dauphin 1001 para animar el use de la mediación. Esta alarma temprana permite a litigantes determiner la mejor época durante la vida de su pleito para una sesión de la mediación. El intentode esta alarma temprana es actuarsobre la mediación de la buena fe enel tiempo óptimo.

La asociación de la barra delcondado de Dauphin proporciona servicios de lamediación y se puede alcanzar en 717-232-7536. La sesión libre de la mediación para los favorables casos del bono se refinio por MidPenn que los servicios juridicos están disponibles con el DCBA.